The next case today is Nadine E. Lima v. City of East Providence et al. Appeal No. 201688. Attorney Dio, please introduce yourself for the record and proceed with your argument. Thank you. May it please the court. I am Attorney Sonia Dio and I represent the appellate in this matter, Nadine Lima. At this point, Your Honor, I'd ask to reserve one moment for rebuttal. One minute for rebuttal. Yes. Yes, you may. We are here asking that this Honorable Court reverse the summary judgment that was entered in favor of the defendants in this matter and remand the matter for a trial. I think that ultimately the entirety of the appellant's case comes down to a series of actions. Essentially, my client had filed an underlying discrimination matter against the City of East Providence. That matter was resolved in two different agreements. One was entered on November 4th of 2015. The other was entered on December 8th of 2015. The November 4th of 2015 agreement had provisions with respect to the hiring of an Affirmative Action Officer by the school district. The agreement on December 8th, admittedly, is a general release that was filed of all claims. Historically, there's a new superintendent that becomes involved with the district in or about January of 2016. On January 6th, 2016, less than one month after the December 8th agreement was signed and a little over two months after the November 4th agreement was signed, she goes to my client and asks her why it is that Mr. Pena, who was the EO officer for the City of East Providence, cannot serve as the EO officer for the district. Now that begins what an appellant argues is a series of retaliations against her. One, there's absolutely no reason for the superintendent to have gone to my client to have asked about that agreement. There's plain language to that agreement. It says that the school department will, on its own, create and fund an Affirmative Action position with duties and responsibilities similar to that for the City of East Providence. So are you saying because the superintendent checked with your client to see if your client had any objections, that's unlawful retaliation? In and of itself, I wouldn't say that, Your Honor. The secondary part of it. Even partially? In what respect? That sounds like she's going out of her way to give your client a voice. Your Honor, I would agree with that. But for the fact that the next thing she does is to, instead of actually creating a position within the district for this Affirmative Action officer, she then has the assistant superintendent take that position as an additional duty. So it's not the creation of another position. The testimony of the assistant superintendent reveals she wasn't paid any additional money for that, and she wasn't told that that was going to be one of her duties when she came into the district. It sounds like you're saying that they then in January breached the 11-4 agreement. Yes. Did you bring a claim for breach of that agreement? We did, and that was, the summary judgment was granted against us. Below, I did not appeal that issue. So then it's binding that the superintendent did not breach the agreement. So if she acted without breach of the agreement, how could that be retaliation? Because she did not act within the spirit of what the agreement was. There's plain language of what the agreement was, which was the creation of this additional position. The reason summary judgment was granted below with respect to that contract had to do with the ability of my client to enforce that contract, not because there wasn't an actual breach of that contract. Did that answer your question, Your Honor? Yes, go ahead. Okay. The next series of things that happens are that my client is assigned to a district middle school where she is dealing with more special education students than any other principal there, which was an issue in the first lawsuit we brought. The next thing that happens is that they decide without telling her that they are applying for a grant to create a pre-K program. They do this without telling her, they're using her credentials, but more importantly they then turn around and involuntarily reassign her into that position. Reassigning her into that position is putting her in a position where suddenly she doesn't have as much control over the curriculum. She is supervising, I think, 60 less employees and has hundreds of less students. We would argue that that is an adverse... What's the temporal gap between that action that you're characterizing as a demotion and the act she took that's protected activity that that devotion would be retaliation for? The protected activity would at the latest run December 6, 2015. That activity of submitting her credentials was in January. Telling her she could be reassigned was at the end of April, and the actual reassignment was in May of 2016. So just to help me with the calendar, the gap between the latest the protective activity could run and the latest the adverse action could be said to have been consummated would be how long? Six months. Six months. But it's our argument that because these other things happen in the in-between, including failing to follow the spirit and intent of the agreement she signed in November of 2015, the assignment to... They give a legitimate... They give a reason for why they did those things that they claim is a legitimate non-retaliatory reason, which I think you accept means the burden shifts back to you to show that it's not. I do. That temporal gap isn't so tight that you might think the temporal gap alone suffices. So what are the features that you're relying on to demonstrate that their claim that they had a legitimate reason for taking that step isn't something that a jury would have to accept? Okay, so again, and I don't want to repeat myself, we go back to the failure to comply with the intent and spirit of the agreement. There was no additional position created. It was given as an additional duty to a superintendent coming in. Is there anything about that last action, the demotion, but I'll just call it the demotion. Is there anything about the demotion itself that you identified, like a comparator of someone else who wasn't demoted or something about the way the process was done that shows that it's fishy? Is that the point about the credentials being used without asking her? That's in part the point with the credentials being asked. The second is that, as stated in the evidence, there was other people that could have been and in fact were put into that position. One of the things that was stated to the appellant was that she was put there because she was the person with the credentials for that. We know when my client left the district that there was another person who was employed by the district who was directly moved into that position. Did she not have the credentials to do it? They both had the credentials to do it. Yeah, so that doesn't help you. One of the things that we rely on to try and say, well, a jury could find that the claimed legitimate non-discriminatory reason isn't so legitimate is that the explanation for why they took this action you're characterizing as a demotion that doesn't hold up. It's exactly that, it's a demotion. The argument of the superintendent was that they were moving her into this position to give her more experience and help develop her. It in fact does the exact opposite. Moving her into this position puts her in a place where she is, again, supervising far less people, dealing with far less students. She's put her in a place where she has less control over the curriculum, all of which are in the record. So this is, at least arguably for a jury, something that is punitive in nature to my client, Ms. Lima. But that's simply saying you think it's an adverse employment action. It doesn't get at the question of how you get over your burden of having evidence that could raise a finding that it was retaliatory. It's not one piece of evidence that would get this claim to that point. It's a combination of the things that happened, Your Honor. And that is our argument, which is that when the superintendent comes in and starts asking questions about a settlement agreement that the ink does not dry on, then fails to comply with the terms of that agreement, then turns around and demotes my client, that that's a series of events that's happened. There are other things that came in there that are relatively minor, but it is our contention that it's all of those things that led to, and can lead a jury to, believe that this is retaliatory action against my client for filing that initial lawsuit that was resolved in 2015. I just had one last point of clarification. In your briefing, unless I misread it, you seem to characterize it as a hostile workplace claim. If I understand you today, you seem to be simply saying it's a retaliation claim based on an adverse employment action that you're saying you can prove a jury could find was retaliatory. That doesn't seem to have anything to do with hostile work environment, which seems fine. It's just I don't know what to do with the fact that it's all framed to us as if you're trying to make out a hostile work environment claim, which seems pretty far afield from the straight up retaliation based on an adverse employment action. Well, it is our contention that it's these acts that create this hostile environment that create a situation. If you have an act that could qualify as an adverse employment action and a demotion could, then the only relevant question is, can you show that that adverse employment action is retaliatory? We don't have to worry about whether it adds up to a hostile work environment. I just don't quite know how to unspool this. That's true if you apply the decision that I referenced earlier, which is that Billings decision that comes from you folks in 2008. If you find that it's not the same thing, then I believe that I have to prove that it's a hostile environment that creates this adverse employment environment for this adverse employment action. Did you make both arguments below or only the hostile work environment argument below? I actually don't know, your honor. I don't know. And I apologize for that. I think I did make both arguments, but I'm not going to say to you I did. Time has expired. Okay. Thank you, Ms. Dale. Thank you. Attorney Deyotte, you can mute your audio and your video at this time, and Attorney Daniels, please unmute your audio and your video. Introduce yourself on the record, please. Good afternoon, your honor. This is Kathleen Daniels on behalf of the appellees, the City of East Providence, and Superintendent Crowley. If I may please the court, your honor. I think the court has actually pinpointed a couple of the issues with plaintiff's appeal, and that is as fully articulated and addressed by the district court, the plaintiff's complaint simply lacks any competent evidence demonstrating any, either one, adverse employment action against the plaintiff, and secondly, whether or not, even if there were adverse employment action, whether there was any causal relationship between that adverse action and plaintiff's protected activity. There is no dispute that there was a protected activity, and then the final argument is that in the, even if we get past the prima facie case, whether or not plaintiff has established any pretext on behalf of the city showing that the real reason behind the actions were discriminatory. The standard on the summary judgment is... I don't want to make too much of this, but could you just clear up this confusion that I'm having about the case as presented in the briefing to us is framed as a hostile work environment case, and then you're now talking about whether there was an adverse employment action and just straight up retaliation. I'm just having trouble. What you have to prove for a hostile work environment is a much heavier lift than it is to prove just that there was a single adverse action that was retaliatory. That's true, Your Honor, and as it was presented by the plaintiffs on appeal, they did the brief on appeal first address whether or not there was, under the McDonald-Douglas burden shift, and whether or not there was an adverse employment action that was retaliatory, and therefore, recoverable, and then they used the fallback argument that all of these actions created a hostile work environment. Were both of those iterations presented below so that the adverse employment action, you're not contesting that that aspect of it is in the case? I'm sorry, I couldn't understand you, Your Honor. You're not disputing the question of whether there's retaliation based on a single adverse employment action, namely the demotion, that that's a live issue in the case? No, Your Honor, that is the way we interpreted their appeal. That is how we interpreted their appeal. And in this case, I mean, I think based upon plaintiff's arguments and their statements on appeal, I think we've pointed this out in our briefing, I think they pretty much concede that the individual actions aren't enough to amount to any, to demonstrate any causal relationship between the alleged adverse actions and the protected activity. But I'd just like to go back, because I'd like to just take it in first view, the claim about the adverse employment actions as a matter of law, the actions that the challenges to simply don't amount to an adverse employment action, which is obviously one of the first steps in plaintiff meeting the prima facie case. Even though a prima facie case is usually generally easy for a plaintiff to meet, in this case they simply haven't. Even though plaintiff likes to describe the new appointment as a demotion, there was no change in any tangible employment for her or herself. In order to amount to it, there has to be some demonstration that switching someone's position amounted to that. And we also have to remember that the court has to... Is it not true that she ended up supervising a smaller group of people as a consequence of the shift? That would have been, yes, the classroom, the school, I'll call it a school, because this was a pre-K pilot program. The school itself was smaller. But that doesn't change her... That's her own personal bruised ego that it was a smaller group. That's not taken into consideration, which the court took into consideration, which this court should as well. The fact of the matter is, is that was a pilot program that they were looking to get someone in there with experience as having a principal position to run this program. The state had just begun it statewide. They gave the city of East Providence the most classrooms than any other municipality. And the city of East Providence was very favorable and wanted to put their best foot forward. So they thought they would do that by putting in someone with experience and who had all the proper certifications. I'm sorry. Well, that just seems like that's an argument about why they thought it was legitimate to do it and that a jury still could have concluded objectively that it was a demotion, unless you're saying no jury could conclude it was a demotion, even though it was a smaller pool to be working on. I'm saying they couldn't, Your Honor. And that's my first prong of our argument. I'm saying they couldn't because the court's case law has said that simply if there's no tangible changes in the position, then as far as either lack of seniority, money, etc., then that's when it comes into effect. But that's only the first prong. That's at the prima facie. And that's actually the second element of the prima facie. We still have the third element of the prima facie, which gets back to, what is the causal relationship between the protected activity and any of these actions? Four minutes remaining. Or any of these actions. There is none whatsoever. The plaintiff relies upon her own subjective interpretation, her own conclusions, but it's only speculation that it was. There's simply no support for it. And as you just pointed out, Your Honor, plaintiffs do not deny that the city has presented sufficient legitimate business reasons for presenting, for changing her position over to the new school. So even if she had a prima facie case, we still get past, it's not disputed that we get past the defendant's burden of just demonstrating a legitimate non-discriminatory basis. And we're right back to, there goes the presumption of any discrimination. The burden is back on plaintiffs to show that it's a pretext. And to show that it's a pretext, and to show that the real reason was discrimination. And in this case, as the court, the lower court went through the evidence meticulously, not only on this change in the position, but also on the claims regarding the contract and the claims on requesting materials, et cetera, there was only two or three others. And the court reasonably found that there was simply no competent evidence to support the claim that this was related in the least bit to her prior suit. And I'd like to point out one thing, Your Honor, there was some discussion during plaintiff's argument about the request, the question of plaintiffs about the settlement agreement and whether or not the city's affirmative action officer could serve. I'd like to put in perspective, at the time that the settlement was reached in November, December of 2015, the entire city had one affirmative action officer, which was Ms. Zepina. Right after plaintiff, right after Ms. Carly became appointed superintendent, she met with plaintiffs. And by plaintiff's own testimony during that initial meeting, which plaintiffs felt very favorably about, she felt it was a very give and take exchange with the superintendent. They agreed to appoint new people to her school. During that exchange, it was plaintiff who raised the settlement agreement. Plaintiff told superintendent that she wanted to be upfront about what had happened. And she said, there was a settlement agreement. I had some past issues. I want to work with you to move forward and get some help and professionally develop. So less than a month, a couple of weeks, I believe it was, is when this conversation that plaintiffs are challenging now was brought up, where Ms. Superintendent went back to her and said, hey, by the way, that settlement, why can't Ms. Zepina be part, be our affirmative action officer as well? So any claim that there was any nefarious intent behind it is simply not supported by any of the evidence that was presented. Once again, we get back to the underlying standard in the case, standard for summary judgment, which is you can, the court does not accept conclusionary allegations on reasonable instances or unsupported speculation. And as we go through the McDonnell-Douglas paradigm and the burden shifting, with the defendants present, submit that first instance, she has not made that first prima facie case. But even if she has, we're still back to where is the evidence of any pretext or of any discrimination against the plaintiff. And there's simply none in this case. I went through in our brief the factual basis and the factual responses to each of the adverse employment claims. We also address the hostile work environment in our briefing, which is, as the court knows, is a cumulative aspect. And we submit that that simply is not enough in this case. And finally, before I forget, the temporal connection between, I think Zoe pointed out during plaintiff's argument, there's a seven-month time frame between the first action and the last alleged adverse employment action. And as this court pointed out, this court has not found that if you're going to rely solely on the timeline, that is, it's closely in time, there has to be something more. It has to be closely connected. And the court has found on several occasions that several months is simply not close enough in order to carry the weight in the case. So if the court doesn't have any further questions for me, I rely on our pleadings on those other factual issues and support. And I would just ask, especially ask the court to affirm the district court's entry of summary judgment in favor of defendants. Thank you, Ms. Daniels. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the hearing.